IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| PHILIP CHARVAT, on behalf of himself and others similarly situated, | : : Case No. |
| Plaintiff, | : |
| v. | : **COMPLAINT – CLASS ACTION** |
| ICOT HEARING SYSTEMS, LLC D/B/A LISTENCLEAR and ICOT HOLDINGS, LLC | : : : |
| Defendants. | : |

**Preliminary Statement**

1. Plaintiff Philip Charvat ("Plaintiff" or "Mr. Charvat") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. In violation of the TCPA, Mr. Charvat alleges that Defendant ICOT Hearing Systems, LLC d/b/a ListenClear ("ListenClear") along with its parent holding company, ICOT Holdings, LLC (collectively referred to as "Defendant") sent him and other putative class members pre-recorded telemarketing calls

without their prior express written consent. It did so even though some of the putative class members, including Mr. Charvat, registered their numbers on the National Do Not Call Registry.

3. Mr. Charvat and putative class members never consented to receive these calls. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, Mr. Charvat brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of the Defendant.

4. A class action is the best means of obtaining redress for the Defendant's wide-scale illegal telemarketing, and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

5. Plaintiff Philip Charvat is a resident of the state of Ohio.

6. Defendant ICOT Hearing Systems, LLC d/b/a ListenClear is a domestic limited liability company with a registered agent of Matt Whelan, 300 Bull St., Suite 200, Savannah, GA 31401.

7. Defendant ICOT Holdings, LLC is a domestic limited liability company with a registered agent of Matt Whelan, 300 Bull St., Suite 200, Savannah, GA 31401.

## Jurisdiction & Venue

8. This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005 ("hereinafter referred to as CAFA"), codified as 28 U.S.C. § 1332(d)(2). The matter in controversy exceeds $5,000,000, in the aggregate, exclusive of interest and costs, as each member of the proposed Class of at least tens of thousands is entitled to up to $1,500.00 in statutory damages for each call that has violated the TCPA. Further, Plaintiff alleges a nationwide class, which will result in at least one Class member from a different state.

9. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

10. Venue is proper under 28 U.S.C. § 1391(b)(1) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the automated calls were made from this District.

## TCPA Background

11. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The TCPA Restricts Pre-Recorded Telemarketing

12. Through the TCPA, Congress outlawed telemarketing via unsolicited automated or pre-recorded telephone calls ("robocalls"), finding:

> [R]esidential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.
>
> . . . .
>
> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call[,] . . . is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* § 2(10) and (12); *see also Mims*, 132 S. Ct. at 745.

13. The TCPA contains a private right of action for the sending of these calls, and provides that a recipient can sue the violator and seek statutory damages as well as injunctive relief. 47 U.S.C. § 227(b)(3).

The TCPA Restricts Calls to the National Do Not Call Registry

14. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire to not receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

15. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

16. A person whose number is on the Registry, and who has received more than one telephone call within any twelve-month period by or on behalf of the same entity in violation of the TCPA, can sue the violator and seek statutory damages and injunctive relief. 47 U.S.C. § 227(c)(5).

17. The regulations exempt from liability a caller who has obtained the subscriber's signed, written agreement to receive telephone solicitations from the caller. 47 C.F.R. § 64.1200(c)(2)(ii). That agreement must also include the telephone number to which the calls may be placed. *Id.*

## Factual Allegations

Both Defendants are Liable for the Illegal Conduct

18. ICOT Holdings owns and controls ListenClear.

19. Holdings' officers and directors direct and control the business strategy and daily operations of ListenClear, and exert operational control over ListenClear.

20. Holdings' officers and directors direct and control ListenClear's sales and marketing strategy, including the use of illegal telemarketing calls.

21. On information and belief, Defendants arbitrarily allocate funds between and amongst themselves. Holdings pays routine expenses for ListenClear, performs accounting services for ListenClear, and reports ListenClear's earnings and losses to its shareholders.

22. Further, Holdings and ListenClear share assets, revenues, and access to capital.

23. Holdings and Incorporated manifest a unity of business interest and operate under the single trade name, ListenClear.

24. ListenClear manifests no separate corporate interests of its own and functions solely to achieve the business purposes and strategy of Holdings.

25. ListenClear performs services sufficiently important to Holdings that absent Incorporated, Holdings would perform those services itself.

26. In fact, Holdings has pursued the legal interests relevant to Listen Clear's business practices in courts. *See e.g. ICOT Holdings, LLC v. Tracy Young, et. al.*, Court of Appears of Georgia, Civil Action No. A18D0158 (November 15, 2017).

Calls to Mr. Charvat

27. Plaintiff Charvat is a "person" as defined by 47 U.S.C. § 153(39).

28. Mr. Charvat's home telephone numbers, (614) 895-XXXX and (614) 895-YYYY, have been on the National Do Not Call Registry for more than five years prior to receipt of the calls from the Defendant.

29. Mr. Charvat has never removed his residential telephone numbers from the National Do Not Call Registry.

30. Mr. Charvat has received repeated calls from the Defendant, including on the following dates: September 8, 2017 and October 3, 2017.

31. Each of the calls began with the use of a pre-recorded message, and then continued with a solicitation of the Defendant's hearing aid goods and services.
In each call, the same recorded voice stated the identical words in the beginning of the calls: "Hi. This is Chloe. I am a hearing administrator on a recorded line. How are you today?"

32. After the Plaintiff responded: "Pretty good" or "Good", the recording continued "Now I am a senior care authority and our records indicate that you or a person in your household are suffering from hearing issues. Is that correct?"

33. In fact, in the call of September 8,2017 this same prerecorded message was played twice, thus proving it was indeed a recording, even in that call.

34. Each of the calls was clearly a "cold call" as the caller had no idea who they were calling when the recording stated "…our records indicate that you or a

7

person in your household are suffering from hearing issues." And later in the calls, when a live representative came on to speak with Plaintiff, each representative asked for Plaintiff's name, as they too had no idea to whom they were speaking to about the use of Defendant's hearing aids.

35. In fact, both of the calls resulted in the Plaintiff being told that the website for the product being offered could be found at www.listenclear.com.

36. That is the Defendant's website.

37. On the calls, the Plaintiff spoke with "Ken Grasso" and "Tenisa".

38. These individuals are believed to be employees of the Defendant.

39. The purpose of these calls was to generate sales for Defendant. In fact, on the call with Mr. Grasso, the Plaintiff was informed that ListenClear had been "in business for 30 years" and they deal "directly with the public, without going to the doctor's office". Mr. Grasso also stated "Listenclear is name of the company. The manufacturer is ICOT in Tulsa, Oklahoma. We own the manufacturing company, it's ICOT" to the Plaintiff.

40. Plaintiff is not a customer of Defendant, and has not provided Defendant with his personal information or telephone numbers or otherwise consented to receive telemarketing calls prior to the receipt of these calls.

41. Unfortunately, the Plaintiff's experience with the Defendant is not unique.

42. Other individuals have registered complaints with the Better Business Bureau about ListenClear's telemarketing:

> I, too, received an unsolicited call from a recording ("*****"). This is the 4th such call, each from a different spoofed number, that I have received in as many days. This time, I played the game, answering all the questions in a way that would get me to a real person so I could find out what company was pulling this scam. I then kept the "sales rep" on the phone long enough to get through her whole script. She got to the point where she needed my personal information. I explained that I would not give that to her and she got nasty. As she tried to regain her composure, she said that even if they did "accidentally" charge my card before they're supposed to or for more than they're supposed to, they would refund the money. Clearly I wasn't going to net her a sale, so she hung up on me. I was just trying to figure out their game/scam in the hopes that enough people will report them and they will be shut down and unable to scam folks who might not be realize it's a scam. BBB, I implore you to get the word out and protect those who are vulnerable to this. Thank you!

Jen E., August 11, 2017. *See* https://www.bbb.org/north-east-florida/business-reviews/hearing-assistive-devices/listenclear-in-savannah-ga-235966740/reviews-and-complaints (Last Visited November 22, 2017).

43. Due in part to these complaints, the Better Business Bureau has given ListenClear a "D" rating.

44. Other individuals on different websites have also registered complaints about Listen Clear's telemarketing conduct:

> For several Months Now I keep getting PHONE CALL after PHONE CALL from this Company . Ive been polite and asked to be removed This has happened EVERYTIME IVE MADE CONTACT WITH A HUMAN AFTER THAT FAKE COMPUTER

9

Jerrod Adams, July 26, 2017

> **Telemarketing Scam Company**
>
> This Company called my number which is on the DNC list 4 - 5 times from 4 - 5 different numbers, within the span of 4 hours.
>
> Absolutely ridiculous and illegal. After staying on the line I got enough information about this company to find out about them and will be filing an FCC complaint later today.
>
> For people looking for hearing product, the above behaviour should be clear to you that this is NOT a legitimate company, this is NOT a legal business. Be careful and do not trust them, go some where else where you're likely to receive legitimate support and business.
>
> A legitimate company does not have to use illegal telemarketing tactics.

Wiegraf, May 3, 2017. *See* https://www.trustpilot.com/review/listenclear.com

(Last Visited November 22, 2017).

45. Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up during the telemarketing calls and their privacy was improperly invaded. Moreover, these calls injured Plaintiff and the other call recipients because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of plaintiff and the class.

46. To the extent Defendant contend that they obtained consent or agreement from Plaintiff and the class members for the calls at issue here, the

Telemarketing Sales Rule, 16 C.F.R. § 310.5(a)(5), requires that such records be maintained. In any event, consent is an affirmative defense under the TCPA, and is unavailable unless Defendant can show that they had it. They did not, even though the Plaintiff contacted Defendant inquiring about the calls before filing this lawsuit.

### Class Action Allegations

47. As authorized by Rule 23 of the Federal Rules of Civil Procedure, and pursuant to LR 23.1, Plaintiff brings this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

48. The classes of persons Plaintiff proposes to represent are tentatively defined as:

PRE-RECORD CLASS

All persons within the United States whose residential phone were sent a pre-recorded telemarketing call from, or on behalf of, the Defendant
within the four years before the filing of the initial Complaint through the date of classes certification.

DNC CLASS

All persons within the United States whose residential phone numbers were registered on the Do Not Call Registry, and who, within the four years before the filing of the initial Complaint, through the date of classes certification, received more than one telemarketing call within any twelve-month period from, or on behalf of, the Defendant.

11

49. Excluded from the classes are counsel, the Defendant, and any entities in which the Defendant have a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

50. The classes as defined above are identifiable through phone records and phone number databases.

51. The potential classes' members number at least in the thousands. Individual joinder of these persons is impracticable.

52. Plaintiff is a member of the classes.

53. There are questions of law and fact common to Plaintiff and to the proposed classes, including but not limited to the following:

    a. Whether Defendant violated the TCPA by using pre-recorded messages to call putative class members;

    b. Whether Defendant violated the TCPA by calling individuals on the National Do Not Call Registry;

    c. Whether Defendant placed calls without obtaining the recipients' prior express invitation or permission for the call;

    d. Whether the Plaintiff and the classes members are entitled to statutory damages because of Defendant's actions.

54. Plaintiff's claims are typical of the claims of class members.

55. Plaintiff is an adequate representative of the classes because his interests do not conflict with the interests of the class, he will fairly and adequately protect the interests of the class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

56. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or their agents.

57. The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

58. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## Legal Claims

### Count One:
### Violation of the TCPA's Pre-Recorded Call provisions

59. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

13

60. The Defendant violated the TCPA by (a) initiating pre-recorded telephone solicitations to residential telephone numbers, or (b) by the fact that others made those calls on its behalf. *See* 47 U.S.C. § 227(b).

61. The Defendant's violations were willful and/or knowing.

**Count Two:**
**Violation of the TCPA's Do Not Call provisions**

62. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

63. The Defendant violated the TCPA by (a) initiating telephone solicitations to persons whose telephone numbers were listed on the Do Not Call Registry, or (b) by the fact that others made those calls on its behalf. *See* 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

64. Moreover, Defendant failed to establish and implement, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the TCPA.

65. The Defendant's violations were willful and/or knowing.

## Relief Sought

WHEREFORE, for himself and all class members, Plaintiff requests the following relief:

A.  Injunctive relief prohibiting Defendant from calling telephone numbers that are on the Do Not Call Registry, pursuant to the TCPA, 47 U.S.C. § 227(c)(5), applicable regulations and implementing orders;

B.  Injunctive relief prohibiting Defendant from calling residential telephone numbers with pre-recorded messages, pursuant to the TCPA, 47 U.S.C. § 227(b)(3), applicable regulations and implementing orders;

C.  Because of Defendant' violations of the TCPA, Plaintiff Charvat seeks for himself and the other putative Class members $500 in statutory damages per violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(c)(5) and 47 U.S.C. § 227(b)(3).

D.  An order certifying this action to be a proper class action under Federal Rule of Civil Procedure 23, establishing any appropriate classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

E.  Such other relief as the Court deems just and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

Dated: December 14, 2017      PHILIP CHARVAT, on behalf of himself and others similarly situated,

By:

s/ *Steven H. Koval*
Steven H. Koval
Georgia Bar No. 428905

THE KOVAL FIRM, LLC
3575 Piedmont Road
Building 15, Suite 120
Atlanta, GA 30305
Telephone: (404) 513-6651
Facsimile: (404) 549-4654
Steve@KovalFirm.com

Anthony I. Paronich (*Subject to pro hac vice*)
BRODERICK & PARONICH, P.C.
99 High St., Suite 304
Boston, MA 02110
Telephone: (508) 221-1510
anthony@broderick-law.com